**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NAQUAN RUIZ,

                                       Plaintiff,

       v.

                                      No. 9:24-CV-0179
OFFICER MARK, et al.,                           (LEK/PJE)

                                   Defendants.

---

**APPEARANCES:**                       **OF COUNSEL:**

Naquan Ruiz
c/o Priscilla Ruiz
70 Delaware Avenue
Apt. 111
Cohoes, New York 12047
Plaintiff pro se

Murphy Burns Groudine LLP           STEPHEN M. GROUDINE, ESQ.
407 Albany Shaker Road
Loudonville, New York 12211
Attorney for defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT - RECOMMENDATION AND ORDER[1]

Plaintiff pro se Naquan Ruiz ("plaintiff"), an inmate who was, at the time this action was commenced, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.[2]

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).
[2] On September 3, 2024, plaintiff filed a Notice of Change of Address after his release from the Rensselaer County Jail. *See* Dkt. No. 10.

Plaintiff alleges that defendants Officer Mark, Kitchen Staff Worker Arthur, and Renssalaer County violated his constitutional rights under the First and Fourteenth Amendments. *See* Dkt. No. 9 at 1-6.[3]  Presently before the Court is defendant Renssalaer County's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. *See* Dkt. No. 20.[4]  For the following reasons, it is recommended that defendant's motion be granted.

## I. **Facts**

In support of their motion, Renssalaer County filed a Statement of Material Facts. *See* Dkt. No. 20-8.  As will be discussed below, plaintiff failed to properly respond to Renssalaer County's Statement of Material Facts.  *See* Dkt. No. 24.

## A. **N.D.N.Y. Local Rule 56.1**

N.D.N.Y. Local Rule 56.1(b) requires that a party opposing summary judgment file a response to the movant's Statement of Material Facts, "admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs."  "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* (emphasis omitted).  Here, plaintiff filed a response to Renssalaer County's motion for summary judgment.  *See generally* Dkt. No. 24.  However, plaintiff's submission is not properly responsive to Renssalaer County's Statement of Material Facts.  Although

---

[3] Plaintiff initially sought to bring this complaint against the Renssalaer County Correctional Facility ("Renssalaer County CF"), Sheriff Kyle Bourgault, Chief Higgitt, Lt. Morin, Lt. Sauer, Kitchen Staff Worker Alex, Kitchen Staff Worker Jess, and Kitchen Staff Worker Lauren, however, on initial review, the Court sua sponte dismissed numerous claims against these defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  *See* Dkt. No. 11.

[4] The undersigned notes that as of the time of defendant's filing, plaintiff has not identified Officer Mark or Kitchen Staff Worker Arthur.  *See* Dkt. No. 11 at 7-8.  To date, neither Officer Mark or Kitchen Staff Worker Arthur have appeared in this action.

plaintiff's response does admit or deny Renssalaer County's "assertions in a short and concise statement, in matching numbered paragraphs," plaintiff also reiterates the facts from the complaint and disputes the factual contentions contained in Renssalaer County's declarations.   N.D.N.Y. L.R. 56.1(b); *see* Dkt. No. 24 at 3-7.   Further, in other parts of plaintiff's response, he does not cite to the record for the facts he sets forth, in violation of Local Rule 56.1(a).  *See* Dkt. No. 24 at 3-7; *see also* N.D.N.Y. L.R. 56.1(a)("Each fact listed shall set forth a specific citation to the record where the fact is established.).

The Court is not required to "perform an independent review of the record to find proof of a factual dispute."  *Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002)). Although the Local Rules provide that the undersigned shall deem admitted any facts that the nonmoving party fails to "specifically controvert," and pro se plaintiffs are expected to abide by the Local Rules, pro se plaintiffs are also afforded special solicitude in this District and Circuit.  *See* N.D.N.Y. L.R. 56.1(b); *see also Treistman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).  Accordingly, in deference to plaintiff's pro se status, the Court will independently review the record when evaluating Renssalaer County's motion for summary judgment, and "treat [plaintiff's] opposition as a response to" Renssalaer County's Statement of Material Facts. *Robinson v. Mirza*, No. 9:21-CV-1322 (DNH/CFH), 2024 WL 4464280, at *7 (N.D.N.Y. July 30, 2024), *report and recommendation adopted sub nom. Robinson v. Mizra*, No. 9:21-CV-1322, 2024 WL 4249222 (N.D.N.Y. Sept. 20, 2024) (citing *Johnson v. Lew*, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017)) ("Out of special solicitude to [the p]laintiff as a *pro se* civil rights litigant . . . the Court will treat his opposition as a response

3

to [the d]efendant's []Statement . . . ." ); *see also Perry v. Ogdensburg Corr. Fac.*, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016) ("[A]lthough [p]laintiff failed to respond to the statement of material facts filed by [d]efendants as required under Local Rule[s], the Court would invoke its discretion to review the entire record when evaluating the parties' respective [m]otions for summary judgment.").[5]

## B. **Undisputed Facts**

On or about, December 14, 2023, plaintiff learned that the Renssalaer County Jail "had pork meatballs in the . . . kitchen from fellow inmates," Tinsbee and McWhite, "who worked in the kitchen."  Dkt. No. 20-8 at 1-2; *see* Dkt. No. 24 at 3-4.  Upon realizing that the jail was serving pork meatballs, Tinsbee and McWhite promptly informed then-Food Service Manager Art Simard ("Simard") "that Muslims could not eat pork meatballs for religious reasons" and the kitchen could not serve this food.  *Id*. (citing Dkt. No. 20-7 at 1); *see* Dkt. No. 24 at 5.

On December 21, 2023, plaintiff filed a "'Grievance Step-1 Informal Resolution Form' . . . alleging that Muslim inmates were unknowingly served pork meatballs."  Dkt. No. 20-8 at 3 (citing Dkt. No 20-4); *see* Dkt. No. 24 at 7.  On December 22, 2023, plaintiff filed a formal grievance.  *See id*. (citing Dkt. No 20-5); *see* Dkt. No. 24 at 7.  On December 21, 2023, "[a]fter receipt of the 'Grievance Step-1 Informal Resolution Form' . . . then-Lieutenant Eric Morin initiated an investigation into the animal composition of the meatballs served to the inmates."  *Id*. (citing Dkt. No 20-3 at 1); *see* Dkt. No. 24 at 7.

Richard Tutunjian ("Tutunjian") has worked in the Rensselaer County Jail kitchen for the past twenty-five years and is "the current food service manager."  Dkt. No. 20-8 at

---

[5] The Court has provided plaintiff with copies of all unpublished cases cited within this Report-Recommendation and Order.

2 (citing Dkt. No. 20-7 at 1); *see* Dkt. No. 24 at 4.  On December 14, 2023, Tutunjian was working in the Rensselaer County Jail kitchen as a cook.  *See id*. (citing Dkt. No. 20-7 at 1); Dkt. No. 24 at 4.  Tinsbee and McWhite were also working on the kitchen staff that day.  *See id*. (citing Dkt. No. 20-7 at 1); Dkt. No. 24 at 5.

"[P]laintiff did not, and still does not, have any personal knowledge as to the workings of the kitchen at the Rensselaer County Jail or what is served to the inmates." Dkt. No. 20-8 at 1 (citing Dkt. No. 20-2 at 80, 82, 127); *see* Dkt. No. 24 at 3.  Plaintiff has never worked in the Rensselaer County Jail kitchen.  *See* Dkt. No. 24 at 3.  "Other than this one reported allegation of pork-based meatballs allegedly being served in December 2023, no inmate has ever filed a formal grievance or complaint about the animal content of the meatballs served at the Rensselaer County Jail." Dkt. No. 20-8 at 3 (first citing Dkt. No. 20-7 at 2, then citing Dkt. No. 20-3 at 2); *see* Dkt. No. 24 at 6.

## C. **Plaintiff's Facts**

Plaintiff is of Mulsim faith.  *See* Dkt. No. 20-2 at 29-32.  The Koran provides that Muslims are "not supposed to consume [pork], touch or assist anybody in consuming or touching [pork].  And that the only way to consume [pork] is if you're on the brink of starvation and you have no livestock.  Other than that it's not to be consumed." *Id*. at 74.

Plaintiff asserts that all correctional facilities are prohibited from serving pork or food with pork additives.  *See* Dkt. No. 20-2 at 61-62.  However, Muslim inmates at the Renssalaer County Jail are not provided specific meals or a special diet; rather, all inmates are served the same food.  *See id*. at 62-63, 84-85.  The Rensselaer County Jail only provides special meals to inmates that suffer from diabetes or request Kosher meals. *See id.* at 63, 97.  Plaintiff claims that there were no standards or policies as to whether

5

pork would or would not be served to the inmates at the Rensselaer County Jail.  *See id*. at 98.

On December 15, 2023,[6] Tinsbee and McWhite, informed plaintiff that the Rensselaer County Jail kitchen was ordering and "serving pork-based meatballs in substitution of chicken and beef meatballs when the stock got low."  Dkt. No. 9 at 3; Dkt. No. 20-2 at 80-83.  Plaintiff believes that as of December 15, 2023, the Renssalaer County Jail had been serving pork meatballs for four months.  *See id*.  Dkt. No. 20-2 at 80-83; Dkt. No. 24 at 10.  Contradictorily, plaintiff testified that Tinsbee and McWhite told him they didn't know how long the Rensselaer County Jail served pork meatballs prior to December 15, 2023.  *See* Dkt. No. 20-2 at 82-83.  However, plaintiff claims that Tinsbee and McWhite told him that pork meatballs were served for as long as they had been working in the kitchen.  *See id*.  Plaintiff also testified that Tinsbee and McWhite told him that the officer working in the kitchen on December 14, 2023, was "threatened to - - either cook it or get . . . fired."  *Id*. at 129.  Plaintiff claims that after Tinsbee and McWhite learned of the pork meatballs, Kitchen Staff Worker Arthur ("Arthur") was "confronted about inmates having religious beliefs and that the consumption of pork was against their religious beliefs," to which Aurthur replied, "[w]hat they don't know won't hurt them."  Dkt. No. 9 at 3; Dkt. No. 24 at 10.

Plaintiff requested to file a grievance with Officer Mark but was denied.  *See* Dkt. No. 9 at 3; Dkt. No. 24 at 10.  Officer Mark told plaintiff, "I eat in the kitchen here and they don't serve no pork here."  *Id*.; *see* Dkt. No. 20-2 at 101; Dkt. No. 24 at 10.  Plaintiff then

---

[6] The parties motion papers, plaintiff's deposition testimony, and the record generally refers to the "pork meatball incident" as having occurred on either December 14, 2023, or December 15, 2023.  The undersigned notes that regardless of the date used, the parties are referring to the same incident giving rise to this lawsuit.

requested to speak to a sergeant. *See id*. Upon this request, Officer Mark ordered plaintiff to "lock-in or [he] [would] call a code and plaintiff would receive a misbehavior report." *Id*.; *see* Dkt. No. 20-2 at 99-102; Dkt. No. 24 at 10. Shortly thereafter, a fellow inmate and the sergeant provided plaintiff with grievance forms. *See* Dkt. No. 9 at 3; Dkt. No. 20-2 at 103-04. Plaintiff filled out the grievance form and placed one copy in the grievance mailbox and mailed a second copy to Lt. Morin. *See id*. On December 22, 2023, Lt. Morin responded to plaintiff's grievance and acknowledged that pork was ordered and served by the Rensselaer County Jail kitchen. *See id*; Dkt. No. 20-2 at 85-86; Dkt. No. 24 at 10. Plaintiff claims that Lt. Morin apologized and stated, "We're sorry. We're going to change . . . the menu, and it won't happen again." Dkt. No. 20-2 at 86; *see* Dkt. No. 20-2 at 92-95.

Plaintiff also states that he knew the meatballs being served were pork because there were two kinds of meatballs, identifiable by their size and color, and one kind of meatball gave him a stomachache. *See id*. at 90-91. After this issue was brought to the prison's attention, the Rensselaer County Jail kitchen changed the meatballs that they served to the inmates. *See* Dkt. No. 20-2 at 84. Plaintiff knows the kind of meatballs being served changed based on the color of the meatballs and that the prison staff gave him "new forms that said they were ordering . . . soy meatballs with turkey and chicken and no pork in it." *Id*.

Plaintiff explains that consuming pork meatballs violated his Muslim beliefs. *See* Dkt. No. 9 at 2. Each time a Muslim individual consumes pork, their prayers are invalidated for forty days. *See id*.; Dkt. No. 2 at 5. Plaintiff asserts that meatballs were served in the Rensselaer County Jail twice every ten days. *See* Dkt. No. 20-2 at 75, 79-

80. Plaintiff states that he was served the same kind of meatballs the entire time he was incarcerated at the Rensselaer County Jail. *See id*. at 130. By his math, plaintiff claims he was served pork meatballs twenty-four times over the course of four months, and as a result, plaintiff's prayers were invalidated for 960 days. *See id*. at 75; Dkt. No. 9 at 2.

Plaintiff has no additional knowledge of how the Rensselaer County Jail kitchen operates or how the jail orders food. *See* Dkt. No. 20-2 at 127-28. He has "never been in the mess hall." *Id*. at 127. No other individuals told him how long they were serving pork meatballs in the Rensselaer County Jail. *See id*. at 131. He is not aware of any other incidents where pork meatballs were served at the Rensselaer County Jail. *See id*. at 128. However, he was told that the Rensselaer County Jail ordered pork meatballs and had them in the kitchen freezer as of the December 14, 2023, incident. *See id*. at 132.

Attached to plaintiff's amended complaint are the labels from three packages of meatballs that he claims came from the Rensselaer County Jail kitchen and contain pork or pork additives. *See* Dkt. No. 9 at 8-10. The third food label has markings stating, "10 LB. MEATBALL BF PORK" and "RENSSALAER COUNTY JAIL." *Id*. at 10.

### D. **Defendant's Facts**

"On or about December 14, 2023, the [Rensselaer County] Jail ran out of non-pork-based meatballs." Dkt. No. 20-8 at 2 (citing Dkt. No. 20-7 at 1). Upon running out of non-pork-based meatballs, Simard "suggested that the kitchen use the employee-only pork-based meatballs to serve the inmates their meal." *Id*. (citing Dkt. No. 20-7 at 1). Tinsbee and McWhite "promptly informed [] Simard that Muslims could not eat pork for religious reasons." *Id*. (citing Dkt. No. 20-7 at 1). "In response to this information, Mr.

8

Simard immediately rejected his initial idea of serving the pork meatballs and instead left the Rensselaer County Jail and purchased meatballs that did not contain pork from US Foods in Clifton Park, New York." *Id*. (citing Dkt. No. 20-7 at 1). "Tutunjian personally observed and participated in the preparation of the newly purchased non-pork meatballs for the 'non-pork' eating inmates, including the plaintiff, on December 14, 2023." *Id*. (citing Dkt. No. 20-7 at 2).

"There is no pattern, practice, procedure, or custom at the Rensselaer County Jail of serving Muslim inmates pork-based meatballs." Dkt. No. 20-8 at 3 (first citing Dkt. No. 20-7 at 2, then citing Dkt. No. 20-3 at 2). "Simard's one-time idea to serve pork meatballs to the inmate population was rejected before any known non-pork-eating inmates were ever served pork meatballs, including the plaintiff." *Id*. (first citing Dkt. No. 20-7 at 2, then citing Dkt. No. 20-3 at 2). Tinsbee, McWhite, and plaintiff do not "know of any other prior suggestion by the kitchen staff to serve pork meatballs to the inmate population besides the one instance on December 14, 2023." *Id*. at 1 (citing Dkt. No. 20-2 at 81-83). "At no point in his 25-year career with the County [did Tutunjian] ever observe[] any employee of the Rensselaer County Jail's kitchen knowingly serve inmates, who are known not to eat pork for religious reasons, pork-based meatballs." *Id*. at 2 (citing Dkt. No. 20-7 at 1).

Lt. Morin's "investigation resulted in a finding that no pork products had been served to the plaintiff or any other Muslim inmates. The results of that investigation were memorialized in a Grievance Investigation Form Part I and Part II that were completed by [Lt. Morin]." Dkt. No. 20-8 at 3-4 (citing Dkt. No. 20-3 at 2).

## II. **Arguments**

### A. **Defendant's Arguments**

Renssalaer County argues that they are entitled to summary judgment as matter of law because plaintiff has failed to establish any constitutional violation or a factual basis to assert a *Monell* claim.  *See* Dkt. No. 20-9 at 2-6 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  First, Renssalaer County argues that plaintiff has not demonstrated his constitutional rights were violated.  *See* Dkt. No. 20-9 at 3-4.  Renssalaer County asserts that "plaintiff has failed to come forward with any specific evidence of when he was allegedly served and ingested meatballs he claims contained pork in violation of his religious beliefs."  Dkt. No. 20-9 at 3.  Renssalaer County contends that plaintiff's allegations are "speculative."  *Id*. at 4.  Renssalaer County further states that plaintiff "conceded at his deposition that he had no personal knowledge as to what occurred in the Jail's kitchen" and fails to submit any admissible evidence to refute the sworn declarations of Chief of Corrections Eric Morin or Food Service Manager Richard Tutunjian.  *Id*. at 3-4 (citing Dkt Nos. 20-2, 20-3, 20-7); *see* Dkt. No. 25 at 2-3.

Second, Renssalaer County argues that plaintiff has not satisfied *Monell* because "there is no evidence of a policy, practice, procedure, or custom implemented by the County that resulted in the plaintiff being served pork meatballs during his stay at Rensselaer County Jail because no such policy, practice, procedure, or custom ever existed."  Dkt. No. 20-9 at 5; *see* Dkt. No. 25 at 3.

## B.  **Plaintiff's Arguments**

In opposition to Renssalaer County's motion, plaintiff reasserts that his First Amendment right to freedom of assembly was violated because he was served pork meatballs while incarcerated at the Renssalaer County Jail.  *see* Dkt. No. 24 at 10.

## III.  **Legal Standards**

On review of defendants' motion for summary judgment, the facts will be related in the light most favorable to plaintiff as the nonmoving party. *See Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citation omitted). Still, the nonmoving party cannot rely on

11

"mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); *see also Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude. *See Treistman*, 470 F.3d at 477. As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[ ]" . . . ..

*Id.* (citations omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

## IV. **Discussion**

### A. *Monell*

"Municipalities may be sued directly under [Section] 1983" pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) "for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance,

regulation, or decision." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell*, 436 U.S. at 690-91). "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'" *Dougal v. Lewicki*, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *10 (N.D.N.Y. Oct. 3, 2023), *report and recommendation adopted*, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690-91)). "Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it 'may not be held liable on a theory of respondeat superior.'" *Id*. (quoting *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000)).  An "official policy or custom" can be pleaded as follows:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Id.* (quoting *Dorsett-Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005)) (internal citations omitted); *see also Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (explaining that, to state an official policy claim under *Monell*, the plaintiff "must do more than simply state that a municipal policy . . . exists"); *Coleman v. Cnty. of Suffolk*, 685 F. App'x 69, 72 (2d Cir. 2017) (summary order) ("Where . . . the conduct of individual defendant officers does not violate the plaintiff's constitutional rights, the municipality is generally not liable for a policy or practice pursuant to which the conduct was performed."); *Fleming v. City of New York*, No. 18-CV-4866 (GBD/JW), 2023

WL 1861223, at *1 (S.D.N.Y. Feb. 9, 2023) (noting that, in some situations, a municipality may be held liable under *Monell* even if a plaintiff is unable to establish liability against individual defendants). "[A] plaintiff must demonstrate that through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)).

To succeed on any municipal liability claim under *Monell*, the plaintiff must first establish that there was an "underlying constitutional violation." *Rakchi v. City of New York*, 800 F. Supp. 3d 494, 501 (E.D.N.Y. 2025) (quoting *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006))) ("As provided by the Second Circuit, an underlying constitutional violation is 'a prerequisite to municipal liability under *Monell.*'"). Here, plaintiff alleges that his First Amendment right to freedom of exercise of religion was violated because the Renssalaer County Jail served pork meatballs in violation of his Muslim faith. *See generally* Dkt. No. 9.

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Bryant v. Miller*, No. 9:18-CV-0494 (GTS/CFH), 2019 WL 5273210, at *7 (N.D.N.Y. June 18, 2019), *report and recommendation adopted,* No. 9:18-CV-0494 (GTS/CFH), 2019 WL 4267376 (N.D.N.Y. Sept. 10, 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974))). "However, due to the unique concerns of the prison setting, prisoners' free exercise rights must be balanced against the interests of prison officials engaged in the complex duties of administering the penal system." *Id.*

14

(quoting *Thomas v. Waugh*, No. 9:13-CV-0321 MAD/TWD, 2015 WL 5750945, at *9 (N.D.N.Y. Sept. 30, 2015) (citing *Ford*, 352 F.3d at 588)).  "As such, a prison regulation or individualized decision to deny a prisoner the ability to engage in a religious exercise is judged under a reasonableness test less restrictive than that ordinarily applied [to burdens on fundamental rights]: a regulation that burdens a [prisoner's] protected right passes constitutional muster if it is reasonably related to legitimate penological interests." *Id*. (quoting *Thomas*, 2015 WL 5750945, at *9 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006))) (internal quotation marks omitted).

"In order to establish a free exercise claim, a plaintiff must demonstrate 'at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" *Bryant*, 2019 WL 5273210, at *7 (quoting Salahuddin, 467 F.3d at 274-75 (citing *Ford*, 352 F.3d at 591)).  "A belief is sincerely held where the plaintiff 'sincerely holds a particular belief and whether the belief is religious in nature.'" *Id*. (quoting *Ford*, 352 F.3d at 590).  "Moreover, it is well-established that an inmate's 'sincerely held belief is substantially burdened where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id*. (quoting *Thomas*, 2015 WL 5750945, at *10 (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996))).

The record is unclear as to whether the Renssalaer County Jail served pork meatballs on December 14, 2023.  *See* Dkt. Nos. 9, 20-2, 20-3, 20-7, 20-8, 24 at 3-7. However, the undersigned concludes that it is not necessary to analyze whether plaintiff's First Amendment free exercise rights were violated by being served pork meatballs because even assuming *arguendo* that plaintiff's free exercise rights were violated, plaintiff has not alleged or satisfied *Monell*.

15

Plaintiff does not respond to Renssalaer County's *Monell* arguments. *See generally* Dkt. No. 24. Plaintiff has not pled or alleged that his constitutional rights were violated due to an official Renssalaer County policy, a persistent and widespread custom or practice, failure to train or supervise, or because a policy-making official's deliberate conduct deprived him of a constitutional right. *See Dougal*, 2023 WL 6430586, at *10 (quoting *Dorsett-Felicelli, Inc.*, 371 F. Supp. 2d at 194); *see also Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297-98 (2d Cir. 2020). Similarly, plaintiff does not refute the sworn declarations of Chief Morin or Tutunjian that "[t]here is no pattern, practice, procedure, or custom at the Rensselaer County Jail of serving Muslim inmates pork-based meatballs." Dkt. Nos. 20-3 at 2, 20-7 at 2.

To the extent that pork meatballs were served to the general population at the Renssalaer County Jail on December 14, 2023, plaintiff has not demonstrated that this was nothing more than a single isolated incident. "Unique, one-time events of the sort we have here are simply not susceptible to *Monell* liability." *Arzu v. City of New York*, No. 24-CV-6058 (CM), 2025 WL 437699, at *5 (S.D.N.Y. Feb. 7, 2025). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy[ ] [that] can be attributed to a municipal policymaker." *Id*. (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)); *Smith v. NYC Dep't of Corr.*, No. 18-CV-7018 (AT/OTW), 2019 WL 2473524, at *6 (S.D.N.Y. June 13, 2019), *report and recommendation adopted sub nom. Smith v. Warden of N. Infirmary Command*, No. 18-CIV-7018 (AT/OTW), 2019 WL 2866729 (S.D.N.Y. July 3, 2019) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a

16

mere employee of the municipality.") (additional quotations and internal quotation marks omitted); *Frith v. City of New York*, 203 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) (dismissing a *Monell* claim alleging a one-time denial of treatment where the plaintiff failed to identify any particular policy at issue).

Plaintiff also claims that the Rensselaer County Jail served pork meatballs for the four months leading up to December 14, 2023, and the entire time he was housed in the jail. *See* Dkt. No. 9 at 3; Dkt. No. 20-2 at 80-83; Dkt. No. 24 at 10. Affording plaintiff due solicitude and reading his claim liberally, plaintiff could be arguing that the by serving pork meatballs for four months, Renssalaer County Jail had a policy or custom of serving pork meatballs to all inmates. However, plaintiff's claim is a speculative conclusion with no further support. *See Knight*, 804 F.2d at 12 (citing *Quarles*, 758 F.2d at 840 (2d Cir. 1985); *Hicks*, 593 F.3d at 166).

Plaintiff supports this allegation by referencing his personal observations of the meatballs he was served while incarcerated at the Rensselaer County Jail and stating that Tinsbee and McWhite told him this information. *See* Dkt. No. 9 at 3; Dkt. No. 20-2 at 80-83, 90-91; Dkt. No. 24 at 10. However, plaintiff does not provide an affidavit from Tinsbee or McWhite attesting to these facts and as stated above, plaintiff does not refute the declarations of Chief Morin or Tutunjian that "[t]here is no pattern, practice, procedure, or custom at the Rensselaer County Jail of serving Muslim inmates pork-based meatballs." Dkt. Nos. 20-3 at 2, 20-7 at 2. Similarly, plaintiff testified that (1) he doesn't know how the Rensselaer County Jail kitchen operates or how the jail orders food; (2) he has "never been in the mess hall"; (3) no other individuals at the Rensselaer County Jail told him how long the kitchen served pork meatballs; and (4) he is not aware of any other

incident(s) where the Rensselaer County Jail served pork meatballs.  Dkt. No. 20-2 at 127-28, 131.  Further, plaintiff conceded that "[he] did not, and still does not, have any personal knowledge as to the workings of the kitchen at the Rensselaer County Jail or what is served to the inmates"; he never worked in the  Rensselaer County Jail kitchen; and "[o]ther than this one reported allegation of pork-based meatballs allegedly being served in December 2023, no inmate has ever filed a formal grievance or complaint about the animal content of the meatballs served at the Rensselaer County Jail." Dkt. No. 20-8 at 1,3; Dkt. No. 24 at 3, 6.

Based on the foregoing, the undersigned concludes that has not established that the Renssalaer County Jail had a policy of serving pork meatballs.  *See Johnson v. Brown*, No. 9:09-CV-0002 (GTS/DEP), 2011 WL 1097864, at *1, 7 (N.D.N.Y. Mar. 22, 2011) (granting the defendants' motion for summary judgment where the "Plaintiff's only evidence establishing the occurrence of the assault . . . is his self-contradictory, incomplete deposition testimony that is wholly unsupported by the record" and the defendants' testimony, which was corroborated by documentary evidence, refuted the plaintiff's unsupported testimony); *see also Louis-Charles v. Baker*, No. 9:16-CV-1417 (MAD/CFH), 2018 WL 5728054, at *10 (N.D.N.Y. July 30, 2018), *report and recommendation adopted sub nom. Louis-Charles v. Barker*, No. 9:16-CV-1417 (MAD/CFH), 2018 WL 4299982 (N.D.N.Y. Sept. 10, 2018) (granting summary judgment where the plaintiff "failed to produce evidence, aside from his conclusory allegations").

Finally, the undersigned notes plaintiff's allegation that Tinsbee and McWhite told him that the officer working in the kitchen on December 14, 2023, was "threatened to - - either cook it or get . . . fired."  Dkt. No. 20-2 at 129.  However, as discussed above, "a

18

municipality may not be held liable under 1983 'solely because it employs a tortfeasor.'" *Mulqueen v. Herkimer Cnty. Child Protective Servs.*, No. 6:22-CV1-301 (TJM/ATB), 2023 WL 4931679, at *6 (N.D.N.Y. Aug. 2, 2023), *report and recommendation adopted*, No. 6:22-CV-1301 (BKS/MJK), 2024 WL 756833 (N.D.N.Y. Feb. 23, 2024) (citing *Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)); *Dougal*, 2023 WL 6430586, at *10 (quoting *Jeffes*, 208 F.3d at 56).

Accordingly, the undersigned recommends that defendants' summary judgment motion be granted because plaintiff has not alleged or demonstrated that his constitutional rights were violated due to an official Renssalaer County policy, a persistent and widespread custom or practice, failure to train or supervise, or because a policy-making official's deliberate conduct deprived him of a constitutional right.  *See Dougal*, 2023 WL 6430586, at *10 (quoting *Dorsett-Felicelli, Inc.*, 371 F. Supp. 2d at 194); *see also Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297-98 (2d Cir. 2020).

V.  **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 20) be **GRANTED**; it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall

be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.[7]

Dated: February 13th, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(C).